USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 6-29-17

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
INTERNATIONAL DIAMOND
IMPORTERS, INC. d/b/a I.D.I. DESIGN,
INC. and MEIRA T. DESIGNS,

                Plaintiff,

-against-

MED ART, INC., et al.,
                Defendants.
------------------------------------------------------X

15-CV-4045 (KMW)
**OPINION & ORDER**

KIMBA M. WOOD, United States District Judge:

International Diamond Importers, Inc. ("Plaintiff" or "IDI") brings this action against Med Art, Inc. ("New York Zen Diamond"), Med-Art Saglik Hizmetleri Ve Kuyumculuk San. Tic. Sti. ("Turkish Zen Diamond"), and Emil Güzeliş ("Güzeliş") (collectively, "Defendants"). Plaintiff brings claims for copyright infringement, trademark infringement, and related state and common law claims.

Defendants move to dismiss all claims pursuant to Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Alternatively, Defendants move to dismiss under the doctrine of *forum non conveniens*, 28 U.S.C. § 1404. For the reasons set forth below, Defendants' Motion to Dismiss for lack of personal jurisdiction and for *forum non conveniens* is DENIED, without prejudice. The Motion to Dismiss for failure to state a claim for copyright infringement, trade dress infringement, false advertising, unfair competition, and unjust enrichment is GRANTED.

### I. Background and Procedural History

Plaintiff IDI is a New York-based designer, manufacturer, and seller of the Meira T jewelry designs. (Complaint ¶ 14). The Meira T jewelry contains precious stones and metals; the asymmetric designs feature "a disproportionate number of pendants." *Id.* ¶ 19. Plaintiff owns the

1

protectable trademark to the Meira T trade dress, as well as the copyrights to the Meira T jewelry designs. *Id.* ¶ 14. Plaintiff sells its jewelry at international trade shows, and markets its designs online, in print advertisements, in magazines, and through word-of-mouth. *Id.* ¶¶ 22-23.

Defendant Turkish Zen Diamond is a Turkish entity that manufactures and sells jewelry with precious metals. *Id.* ¶¶ 7, 28. Defendant New York Zen Diamond is a New York corporation that sells jewelry. *Id.* ¶ 6; (Opp'n to Renewed MTD (Doc. No. ["Opp'n"] at 4). Defendant Güzeliş is the majority shareholder of both New York Zen Diamond and Turkish Zen Diamond, (Güzeliş Decl. ¶¶ 1, 14, 18), and is the CEO of both entities.

Plaintiff claims that Defendants manufactured, exhibited, and sold jewelry designs that are substantially similar or identical to Plaintiff's Meira T jewelry designs. (Complaint ¶¶ 27-28). Specifically, Plaintiff alleges that Defendants exhibited infringing products at the 2015 Hong Kong International Jewellery Show ("Hong Kong Show"), where many buyers attended, including some from New York. *Id.* ¶ 28.

On April 27, 2016, this Court denied Defendants' Motion to Dismiss without prejudice, and granted Plaintiff leave to conduct jurisdictional discovery. The Court now addresses Defendants' Renewed Motion to Dismiss.

## II. Personal Jurisdiction

Defendants claim that this Court lacks personal jurisdiction over the foreign Defendants, Turkish Zen Diamond and Güzeliş. Although Turkish Zen Diamond is a Turkish entity and Güzeliş resides in Istanbul, this Court has general jurisdiction over Turkish Zen Diamond, and specific jurisdiction over both foreign Defendants.

A. Legal Standard

On a motion to dismiss pursuant to Rule 12(b)(2), the plaintiff bears the burden to establish personal jurisdiction. In particular, "[w]here the parties have conducted jurisdictional discovery but have not held an evidentiary hearing, the plaintiff's allegations must be factually supported, so that 'if credited . . . would suffice to establish jurisdiction over the defendant.'" *Chaiken v. VV Pub. Corp.*, 119 F.3d 1018, 1025 (2d Cir. 1997); *S.E.C. v. Gonzalez de Castilla*, 2001 WL 940560, at *4 (S.D.N.Y. Aug. 20, 2001) (Sweet, J.). Following jurisdictional discovery, a plaintiff must demonstrate that personal jurisdiction exists by a preponderance of the evidence. *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir.1981).

The Due Process clause of the Fourteenth Amendment allows a state to exercise general personal jurisdiction over a non-resident defendant with whom it has certain contacts, as long as it does not offend traditional notions of fair play and substantial justice. *Calder v. Jones*, 465 U.S. 783, 788 (1984). A court considers the relationship between the defendant, the forum, and the litigation to determine whether minimum contacts exist. *Chaiken*, 119 F.3d at 1027 (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984)).

Additionally, exercising specific personal jurisdiction over a defendant is proper if they "have contacts sufficient to satisfy both the [New York] long-arm statute and the due process clause of the Fourteenth Amendment." *Chaiken*, 119 F.3d at 1025.

**B. General Jurisdiction over Turkish Zen Diamond**

A federal court sitting in New York has general jurisdiction over an entity when its contacts within New York are so continuous and systematic as to render the corporation essentially at home in New York. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S.Ct. 2846, 2851 (2011); *Daimler AG v. Bauman*, 134 S.Ct. 746, 749 (2014). The paradigmatic

examples of general jurisdiction over a corporation are in its place of incorporation and its principal place of business. Turkish Zen Diamond is a Turkish limited liability company, and its business address is in Istanbul, Turkey. (Renewed MTD at 3, 8 (Doc. No. 56)).

However, a corporation might still be at home in another forum state, rendering personal jurisdiction appropriate in that forum. For example, if a foreign corporation has a subsidiary in New York, and that subsidiary functions as a "mere department" of the foreign parent, the court may have general jurisdiction over that foreign corporation. To determine if a subsidiary is a department of its parent corporation, courts in this Circuit consider the following four factors, known as the *Beech* test from *Volkswagenwerk Aktiengesellschaft v. Beech Aircraft Corp.*, 751 F.2d 117 (2d Cir. 1984) ("*Beech*"): 1) common ownership; 2) financial dependence of the subsidiary on the parent corporation; 3) the degree of interference in personnel selection and a failure to observe corporate formalities; and 4) the degree of control the parent corporation wields over the subsidiary's marketing and operational policies. *Id.* at 120-22. The "subsidiary" need not be an actual subsidiary of the parent corporation to be a department of that entity; rather, "nearly identical ownership interests must exist before one corporation can be considered a department of another corporation for jurisdictional purposes." *Id.* at 120; *see also SPV OSUS Ltd. v. AIA LLC*, 2016 WL 3039192, at *4 (S.D.N.Y. May 26, 2016) (Rakoff, J.) (finding a corporation to be a department of another outside of the parent-subsidiary context).

     i. *Beech* Factors

Under the *Beech* factors, this Court finds that New York Zen Diamond is a department of Turkish Zen Diamond, and thus exercising general personal jurisdiction over it is proper.

1. Common Ownership

The Second Circuit has held that common ownership is the "essential" factor in analyzing whether or not a corporation is a "mere department" of another. *Beech*, 751 F.2d at 120.

Although Güzeliş has made conflicting statements about whether or not Turkish Zen Diamond is the parent of New York Zen Diamond, Güzeliş's ownership of both corporations belies his claim of separation. Güzeliş owns 92% of Turkish Zen Diamond's shares, and 100% of New York Zen Diamond's shares. *See, e.g., ESI, Inc. v. Coastal Corp*, 61 F. Supp. 2d 35, 52 (S.D.N.Y. 1999) (McKenna, J.) (finding 90% common ownership to be sufficient).

Defendants argue that because Turkish Zen Diamond and New York Zen Diamond do not hold ownership interests in one another, this *Beech* factor cannot apply. However, that is not a requirement to satisfy the "essential" *Beech* factor. The Court finds that Güzeliş's near-total interest in both corporations demonstrates "nearly identical ownership interests." *Jacobs v. Felix Bloch Erben Verlag*, 160 F. Supp. 2d 722, 734 (S.D.N.Y. 2001) (Sand, J.).

2. Financial Dependence

Although common ownership between a parent and its alleged department is "essential" to the department test, courts must also consider the remaining three *Beech* factors. *Ginsberg v. Government Properties Trust. Inc.*, 2007 WL 2981683, at *8 (S.D.N.Y. 2007) (Haight, J.). The second *Beech* factor is the subsidiary's financial dependence on the parent corporation, for example, if the parent provides a no-interest loan, or controls the subsidiary's finances. *See Beech*, 751 F.2d at 121-22.

Similar to the defendant in *Beech*, New York Zen Diamond is "wholly dependent upon [Turkish Zen Diamond's] financial support to stay in business." *Id.* at 121. Güzeliş stated in his deposition that he funded the initial capital investment in New York Zen Diamond, in order to

5

increase Turkish Zen Diamond's New York sales. (Güzeliş Depo. Tr., 30: 11-23; 34: 8-16; 40: 2-5). Turkish Zen Diamond provides 99% of New York Zen's products for sale, (Opp'n at 11), and earns profits from those sales. (Renewed MTD at 10). Güzeliş regularly reviews New York Zen Diamond's financial records. (Opp'n at 11, Güzeliş Renewed MTD Decl. at ¶ 4).

Defendants argue that New York Zen Diamond and Turkish Zen Diamond are not financially interdependent, because they maintain different bank accounts. (Renewed MTD at 10). However, a corporation need not use the same bank account to be financially reliant on another.

The Court finds that the second factor weighs in favor of Plaintiff.

### 3. Personnel Selection

The third *Beech* factor is the degree of interference in the selection of a subsidiary's personnel, and a failure to observe corporate formalities. *See Beech*, 751 F.2d at 121 (listing examples of when officers were transferred between the parent and its subsidiary, or when the parent paid the salaries of those common officers).

New York Zen Diamond has two employees, Ali K. Kucukselim and Mehmet T. Furtun, who are also its officers and directors. (*See* Opp'n at 6 (describing the various positions Mr. Kucukselim has listed in the company's biennial statements)).

Güzeliş, the sole officer and director of Turkish Zen Diamond, is listed as the CEO of New York Zen Diamond on state records, as well as on recent biennial statements. (Opp'n at 12). Plaintiff alleges that Güzeliş has admitted to being the "boss" of both entities. *Id.* Defendants rebut, conclusorily, stating that "Turkish Zen Diamond does not interfere in the selection of NY Zen Diamond's executive personnel or otherwise fail to observe NY Zen Diamond's corporate formalities," (Renewed MTD at 10), without demonstrating what those formalities are, or

6

explaining why Güzeliş is listed as New York Zen Diamond's CEO in recent filings. Thus, the Court finds that the third factor weighs in favor of Plaintiff.

4. Marketing and Promotional Activities

The fourth and final *Beech* factor is the parent's control over the marketing and operational policies of the subsidiary. *See Beech*, 751 F.2d at 122 (examples include a parent listing the subsidiary as a branch on its letterhead, or the parent preparing the subsidiary's marketing material).

Plaintiff highlights that New York Zen Diamond's social media pages are maintained by Turkish Zen Diamond. Both entities are referred to as a singular unit: "a leader in diamond jewellery [sic] in Turkey" with a "sales office" in New York. (Opp'n at 13). There exists no meaningful separation between the two entities in their promotions; often, "Zen Diamond" is advertised as attending a trade show, without differentiating between Turkish Zen Diamond and New York Zen Diamond. *Id.* The fourth *Beech* factor weighs in favor of Plaintiff, as well.

In sum, all four *Beech* factors overwhelmingly demonstrate that New York Zen Diamond operates as a department of Turkish Zen Diamond; thus, exercising general jurisdiction over Turkish Zen Diamond is proper.

### C. Specific Jurisdiction over Turkish Zen Diamond and Güzeliş

The Court also has specific personal jurisdiction over both Turkish Zen Diamond and Güzeliş. A federal court sitting in New York may exercise specific personal jurisdiction over an out-of-state defendant when that defendant "has sufficient contacts with the forum state to satisfy the requirements of due process." *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 244 (2d Cir. 2007).

i. Long-Arm Jurisdiction under CPLR § 302(a)(3)

Plaintiff contends that Defendants are subject to specific jurisdiction under subsection (a)(3) of New York's long-arm statute, 35 N.Y.C.P.L.R. § 302 (McKinney). Under that subsection, this Court has jurisdiction over a non-domiciliary who: (3) "commits a tortious act without the state causing injury to person or property within the state, ... if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce." Section 302(a) also confers jurisdiction over individual corporate officers who supervise and control an infringing activity. *Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010); *see also LaMarca v. Pak-Mor Mfg. Co.*, 95 N.Y.2d 210, 214 (2000).

Because Plaintiff asserts that subsections 302(a)(3)(i) and (a)(3)(ii) both provide a basis for exercising jurisdiction over Defendants, the Court will examine the elements of these provisions in turn. The Court finds that Plaintiff has alleged conduct that demonstrates, by a preponderance of the evidence, that this Court has jurisdiction against both Turkish Zen Diamond and Güzeliş, under both subsections (i) and (ii).

1. Defendant Committed a Tortious Act Outside the State

Plaintiff concedes that Turkish Zen and Güzeliş are non-domiciliaries, and the conduct alleged in the Complaint took place at a trade show outside of New York, in Hong Kong. (Complaint ¶ 28). Plaintiff alleges that Defendants displayed and sold jewelry in Hong Kong, violating Plaintiff's Meira T Jewelry Designs, Meira T Trade Dress, Meira T Works and Meira T Marks ("Meira T trademarks"). Defendants allegedly manufactured, imported, exported,

8

advertised, marketed, promoted, distributed, displayed, offered for sale, and sold jewelry designs that are substantially similar to the Meira T Works and Meira T Trade Dress ("Infringing Products"), to U.S. retailers at trade shows such as the Hong Kong Show in March of 2015. (Complaint ¶ 28). Plaintiff sent Defendants a Cease and Desist letter once they learned of Defendants' potentially infringing conduct. *Id.* ¶ 29.

Plaintiff contends that Defendants' conduct will cause consumer confusion, by leading consumers to believe that the Infringing Products are associated with Plaintiff. They also claim to have suffered an irreparable injury of lost sales, that Plaintiff has been deprived the value of its Meira T trade dress, and that its business has suffered losses.

2. Situs of Injury: New York

Defendants argue that they have no contacts in New York to give rise to the action. (Renewed MTD at 8). However, the evidence contradicts Defendants' claim of having insufficient contacts in New York. Defendants also contend that there cannot be personal jurisdiction over them, because they did not engage in any unlawful activities in New York or in the United States. However, the extraterritoriality of their conduct is not dispositive, under New York law, for a court to have personal jurisdiction over a non-domiciliary defendant.

Plaintiff must "allege facts demonstrating a non-speculative and direct New York-based injury to its intellectual property rights." *Pablo Star Ltd. v. Welsh Gov't*, 170 F. Supp. 3d 597, 607 (S.D.N.Y. 2016) (Oetken, J.) (citing *Troma Entm't, Inc. v. Centennial Pictures Inc.*, 729 F.3d 215, 220 (2d Cir. 2013)).

Within this Circuit, several district courts have held that "[t]he torts of copyright and trademark infringement cause injury in the state where the allegedly infringed intellectual property is held." *McGraw-Hill Co. v. Ingenium Tech. Corp.*, 375 F.Supp.2d 252, 256

(S.D.N.Y. 2005) (Rakoff, J.); *see also Capitol Records, LLC v. VideoEgg, Inc.*, 611 F.Supp.2d 349, 363 (S.D.N.Y. 2009) (Baer, J.) (finding the injury to be in New York, the plaintiffs' place of business, as they suffered in-state injuries in the form of diminished copyright value); *Design Tex Grp., Inc. v. U.S. Vinyl Mfg. Corp.*, 2005 WL 357125, at *1 (S.D.N.Y. Feb. 14, 2005) (Rakoff, J.) ("[B]ecause the plaintiffs (and their intellectual property) are based in New York, the injury is felt within the state no matter where the infringement takes place.").

The Second Circuit certified a question to the New York Court of Appeals on this issue, in *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 39 (2d Cir. 2010). The New York Court of Appeals responded, "[i]n copyright infringement cases *involving the uploading of a copyrighted printed literary work onto the Internet*," the location of the injury, for jurisdiction under § 302(a)(3)(ii), is not the location of the infringement, but the location of the copyright owner, "when its printed literary work is uploaded without permission onto the Internet for public access." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 16 N.Y.3d 295, 301-02 (2011).

Following the logic of the New York Court of Appeals and the district courts in this Circuit, this Court finds that the infringement of Plaintiff's Meira T Works causes Plaintiff injury in New York, their place of business, in the form of reputational harm and lost business. (Opp'n at 1-17; Complaint ¶ 49, 58).

        3. Regularly does business, or derives substantial revenue

Under CPLR § 302 (a)(3)(i), Plaintiff must demonstrate that Defendants: 1) regularly conduct or solicit business in New York; 2) engage in any other persistent course of conduct; *or* 3) derive substantial revenue from goods used or consumed or services rendered, in New York. The subsection "necessitates some ongoing activity within New York State"—more than a single business transaction. *Ingraham v. Carroll*, 90 N.Y.2d 592, 597 (1997).

As established *supra*, Defendants operate a New York sales office that functions as its department. Defendants acknowledged that the office was set up in 2001 to increase sales in the United States. (Güzeliş Depo. Tr., 28: 8-16; 30:11-23). Turkish Zen Diamond derives substantial revenue from supplying 99% of the goods sold by New York Zen Diamond, at a minimum, for the last 5 years. (Interr. Answer No. 10; Opp'n at 18; Güzeliş Depo. Tr. 40: 2-11).

4. Reasonable expectation and substantial revenue

Under CPLR § 302 (a)(3)(ii), Plaintiff must demonstrate that Defendants: 1) "expect[] or should reasonably expect the act to have consequences in the state," *and* 2) "derive[] substantial revenue from interstate or international commerce."

To ensure that this test comports with due process, New York courts require "tangible manifestations of a defendant's intent to target New York, or ... concrete facts known to the non-domiciliary that should have alerted it to the possibility of being brought before a court in the Southern District of New York." *DH Servs., LLC v. Positive Impact, Inc.*, 2014 WL 496875, at *13 (S.D.N.Y. Feb. 5, 2014) (Abrams, J.) (quoting *Royalty Network Inc. v. Dishant.com LLC*, 638 F.Supp.2d 410, 424 (S.D.N.Y. 2009) (Stein, J.)). In the context of trademark and copyright infringement claims, courts examine whether defendants knew or should have known that a New York company held the intellectual property rights at issue, and whether defendants made a "discernible effort to directly or indirectly serve the New York market." *Id.* (quoting *Capitol Records*, 611 F.Supp.2d at 363).

Plaintiff alleges that Defendants were unquestionably aware of the Meira T trademarks and copyrights, because Defendants frequently attended the same trade shows as Plaintiff. (Opp'n at 19). Comparing Plaintiff's Meira T jewelry to Defendants' creations, the Court finds the latter to be substantially similar to the Meira T jewelry designs, evidencing some awareness

11

by Defendants of Plaintiff's intellectual property. *See* Complaint ¶ 13; Ex. ___ (side-by-side of designs).

Defendants also made a discernible effort to serve the New York market through operating New York Zen Diamond as their New York sales office, and subsequently derived revenue from the sales of inventory to New York Zen Diamond. Defendants, including Güzeliş, regularly attend trade shows in the United States, demonstrating an effort to serve the domestic market. (Güzeliş Tr. 51:5-25).

In sum, this Court has jurisdiction over Turkish Zen Diamond under Sections 302(a)(3)(i) and 302(a)(3)(ii).

### ii. Güzeliş

Out-of-state corporate officers are subject to jurisdiction under Section 302(a) when they supervise and control an infringing activity, *Chloe*, 616 F.3d 158, 164 (2d Cir. 2010), or are primary actors in the transaction. *Rovio Entm't, Ltd. v. Allstar Vending, Inc.*, 97 F. Supp. 3d 536, 542 (S.D.N.Y. 2015) (Forrest, J.) (quoting *Karabu Corp. v. Gitner*, 16 F. Supp. 2d 319 (S.D.N.Y. 1998) (Sotomayor, J.)). A plaintiff must offer detailed allegations of the defendant's control over the alleged infringement. *Id.*

Plaintiff's exhibits and Güzeliş's deposition are filled with examples of his control over Turkish Zen Diamond and New York Zen Diamond: he owns 92% of the former and 100% of the latter; he is listed as the CEO of both New York Zen Diamond and Turkish Zen Diamond; Güzeliş created New York Zen Diamond in order to increase Turkish Zen Diamond's profits; he is responsible for the jewelry designs; and he arranges for Turkish Zen Diamond to attend trade shows, which generates most of the company's business, including the shows in Hong Kong.

Thus, Güzeliş is also subject to jurisdiction under Section 302(a).

### D. Due Process

The test for whether exercising personal jurisdiction comports with due process has two steps: the minimum contacts inquiry, and the reasonableness inquiry, such that "the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

Turkish Zen Diamond and Güzeliş purposely availed themselves of the New York forum by using New York Zen Diamond as their subsidiary, to increase sales and revenue; therefore, the foreign Defendants could reasonable anticipate "being haled into court in this forum." *Newbro v. Freed*, 337 F. Supp. 2d 428, 434 (S.D.N.Y. 2004) (Castel, J). Having invoked the benefits and protections of the laws of New York, the foreign Defendants created a "substantial connection" with New York—satisfying the threshold minimum contacts requirement—and availed themselves of the privilege of conducting business within New York. *Asahi Metal Indus. Co. v. Superior Court of California, Solano Cnty.*, 480 U.S. 102, 108 (1987).

The reasonableness of exercising jurisdiction rests on several factors: the burden on the defendant, the plaintiff's interest in obtaining relief, the interests of the forum State, the interest of the interstate judicial system in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering social policies. *Id.* at 113 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980) (citations omitted)). Where the plaintiff has made a threshold showing of minimum contacts, the exercise of jurisdiction is favored, except when the defendant presents a compelling case that may render jurisdiction unreasonable. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).[1]

---

[1] If jurisdiction is proper under Section 302(a), due process will be satisfied, because Section 302 "does not reach as far as the constitution permits." *Topps Co v. Gerrit J. Verburg Co.*, 961 F.Supp. 88, 90 (S.D.N.Y. 1997) (Sweet, J.).

Defendants fail to demonstrate that exercising jurisdiction is unreasonable. The burden on Defendants to litigate is tempered by its substantial connection to New York, through New York Zen Diamond. Moreover, the state of New York has an interest in resolving conflicts between business owners, including those with protectable copyright and trademark interests.

Accordingly, the Court finds exercising jurisdiction over Turkish Zen Diamond and Güzeliş to be reasonable and consistent with due process.

### III. Motion to Dismiss for Failure to State a Claim

Defendants move to dismiss Plaintiff's Complaint under Rule 12(b)(6). A court accepts as true all well-pleaded factual allegations, while drawing all reasonable inferences in favor of the non-moving party, for the purpose of this motion. *See Kaufman v. Time Warner*, 836 F.3d 137, 141 (2d Cir. 2016). To survive a motion to dismiss under Rule 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

#### A. Failure to State a Claim: Copyright and Lanham Acts

Defendants argue that Plaintiff has failed to state sufficient facts to raise a viable cause of action under the Copyright and Lanham Acts. Defendants ask the Court to dismiss the Copyright and Lanham Act counts for Plaintiff's failure to allege any domestic predicate acts.

Plaintiff's Complaint centers on Defendants' alleged infringement through exhibiting the Meira T Works at the Hong Kong Show in 2015, attended by New York buyers.

Defendants cite the Federal Circuit's decision in *Litecubes, LLC v. N. Light Prod., Inc.*, 523 F.3d 1353 (Fed. Cir. 2008), for the principle that foreign defendants will have "substantial

protection if the activity complained of took place wholly outside of the United States," and the notion that "such cases will often be able to be quickly disposed of in a Rule 12(b)(6) motion to dismiss for failure to state a claim…." *Id.* at 1366 n.14. The Federal Circuit in *Litecubes*, as well as this Court in its April 27, 2016 opinion, held that the extraterritoriality of the conduct alleged would be treated as an element of the infringement claims, rather than a bar to subject matter jurisdiction. Defendants argue the extraterritorial conduct "could not possibly constitute" a predicate domestic act to state a claim under the Copyright and Lanham Acts. This Court agrees.

### i. Extraterritorial Application of the Lanham Act

The Second Circuit has held that courts should consider the three *Vanity Fair* factors to determine whether the Lanham Act can be applied extraterritorially: "(i) whether the defendant is a United States citizen; (ii) whether there exists a conflict between the defendant's trademark rights under foreign law and the plaintiff's trademark rights under domestic law; and (iii) whether the defendant's conduct has a substantial effect on United States commerce." *Hong Leong Fin. Ltd. (Singapore) v. Pinnacle Performance Ltd.*, 2013 WL 5746126, at *4 (S.D.N.Y. Oct. 23, 2013) (Furman, J.) (quoting *Vanity Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643 (2d Cir.1956) (The Court of Appeals has "never applied the Lanham Act to extraterritorial conduct absent a substantial effect on United States commerce.")).

Plaintiff alleged that Defendants' actions created a likelihood of consumer confusion (Complaint ¶¶ 49, 54), which damaged Plaintiff's business and goodwill in the United States. *Id.* ¶¶ 49, 54, 58. Plaintiff also alleged that Defendants' alleged infringement targeted the United States by selling the products in question to consumers in the United States and displaying the Infringing Products to industry professionals from the United States—which caused Plaintiff substantial harm. *Id.* ¶¶ 21, 22, 28.

However, Plaintiff fails to show with particularity whether Defendants' infringing conduct in Hong Kong had a substantial effect on United States commerce. Plaintiff merely states that Defendants' actions caused "substantial and irreparable harm to Plaintiff," *id.* ¶¶ 42, 49, 58, without demonstrating this effect with any particularity, let alone a "substantial" effect on United States commerce. As the United States Supreme Court held in *Iqbal*, "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.". 556 U.S. at 678.

ii. Extraterritorial Application of the Copyright Act

Secondly, the Copyright Act generally does not apply extraterritorially. The Second Circuit recognized an exception to this principle when "the type of infringement permits further reproduction abroad," *Update Art, Inc. v. Modiin Publ'g, Ltd.*, 843 F.2d 67, 73 (2d Cir.1988), and defendants manufacture copyrighted material without authorization in the United States. *Id.*

For this exception to apply, a plaintiff must show that the conduct (1) took place in the United States, and (2) violated the Copyright Act. *Roberts v. Keith*, 2009 WL 3572962, at *4 (S.D.N.Y. Oct. 23, 2009) (Preska, J.); *Fundamental Too, Ltd. v. Gemmy Indus. Corp.*, 1996 WL 724734, at *5 (S.D.N.Y. Dec. 17, 1996) (Mukasey, J.).

Plaintiff demonstrates with great particularity the alleged infringement that took place at the Hong Kong Show. (Complaint ¶ 28; Ex. D). As mentioned *supra*, Plaintiff states that Defendants targeted U.S. retailers and consumers, even some in New York, by manufacturing, advertising, distributing, and selling products infringing the Meira T copyrighted fine jewelry designs. (*Id.* ¶¶ 28, 30). Plaintiff demonstrates Defendants' extensive contacts with the United States, particularly in New York, through New York Zen Diamond. However, Plaintiff fails to state with particularity that the alleged infringement *took place* in the United States.

Given that Plaintiff has alleged actionable conduct for trademark or copyright infringement outside the reach of the Lanham and Copyright Acts, this Court dismisses these claims, granting Plaintiff leave to amend the Complaint with particular allegations of the substantial effects of Defendants' infringement on commerce, and any domestic predicate acts of copyright infringement.

### B. Failure to State a Claim under New York Law: False Advertising, Unfair Competition, and Unjust Enrichment

i. False Advertising

Similarly, to succeed on a claim of false advertising under New York statutory law, Plaintiff must show "[d]eceptive acts or practices" or "false advertising," both "in the conduct of any business, trade or commerce or in the furnishing of any services *in this state*." Gen Bus Law §§ 349, 350 (emphasis added).

The New York Court of Appeals, in *Goshen v. Mut. Life. Ins. Co.*, held that this statute was intended to address commercial misconduct taking place in New York. *Goshen v. Mut. Life Ins. Co. of N.Y.*, 98 N.Y.2d 314, 324–25 (2002). Plaintiff attempts to meet this requirement by pointing to the allegations that Defendants have displayed and sold infringing products to New York consumers, and the infringement has effects on Plaintiff's business in New York. (Complaint, ¶¶ 28, 61-62, 67). Because Plaintiff fails to state with particularity that any actionable misconduct *took place* in New York, the Court GRANTS Defendants' Motion to Dismiss the fourth and fifth causes of action in the Complaint.

ii. Unfair Competition

To succeed on claim of unfair competition under New York common law, Plaintiff must couple the evidence of liability under the Lanham Act claims with a showing of actual consumer

confusion or a likelihood of confusion, and with some element of bad faith by Defendants. *See Omicron Capital, LLC v. Omicron Capital, LLC*, 433 F. Supp. 2d 382, 395 (S.D.N.Y. 2006) (Sweet, J). Because Plaintiff fails to allege with particularity conduct that would make defendants liable under Lanham Act, the Court dismisses Plaintiff's unfair competition claims.

### iii. Unjust Enrichment

Plaintiff's claim of unjust enrichment is inapposite in this case. Unjust enrichment claims are traditionally reserved for quasi-contract disputes, in order to prevent injustice "in the absence of an actual agreement between the parties." *Georgia Malone & Co. v. Rieder*, 19 N.Y.3d 511, 516, (2012). To succeed on a claim for unjust enrichment, a plaintiff must show that (1) defendant was enriched, (2) at plaintiff's expense, and (3) "equity and good conscience require defendant to make restitution." *Violette v. Armonk Assocs., L.P.*, 872 F. Supp. 1279, 1282 (S.D.N.Y. 1995) (Sweet, J.).

Because of the quasi-contractual nature of this claim, a plaintiff must prove that they performed services for the defendant, which caused the defendant's unjust enrichment. *Piccoli A/S v. Calvin Klein Jeanswear Co.*, 19 F. Supp. 2d 157, 166 (S.D.N.Y. 1998) (Kaplan, J.). A plaintiff must also have a sufficiently close relationship with the other party. *Sperry v. Crompton Corp.*, 8 N.Y.3d 204, 210 (2007); *see also Georgia Malone*, 19 N.Y.3d at 516 (requiring "a relationship or connection between the parties that is not 'too attenuated'").

Plaintiff claims that Defendants were unjustly enriched at Plaintiff's expense, by deriving profits from allegedly infringing conduct. (Complaint ¶¶ 34, 78; Opp'n at 23). Yet Plaintiff does not allege that they performed services for Defendants, nor does Plaintiff show a "sufficient relationship" with Defendants to sustain an unjust enrichment claim. *Sperry*, 8 N.Y.3d at 210.

Thus, the Motion to Dismiss Plaintiff's unjust enrichment claim is GRANTED.

## IV. *Forum Non Conveniens*

Finally, Defendants move to dismiss the Complaint for *forum non conveniens*, which this Court has the discretion to do, if another forum would be a more efficient venue to litigate this case. See *Am. Dredging Co. v. Miller*, 510 U.S. 443, 448 (1994). The doctrine of *forum non conveniens* "has continuing application [in federal courts] only in cases where the alternative forum is abroad, and perhaps in rare instances where a state or territorial court serves litigational convenience best." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (internal citations and quotation marks omitted). Defendants offer no alternative forum to New York. Rather, Defendants state that the alleged infringement occurred in Hong Kong, and two of the three Defendants are located in Turkey; thus, litigating in New York, Defendants argue, is "not appropriate." (Renewed MTD at 17).

In *Gulf Oil v. Gilbert*, the United States Supreme Court gave district courts a non-exhaustive list of factors to consider in determining whether to dismiss a case for *forum non conveniens*, including: 1) the private interest of the litigant; 2) the relative ease of access to sources of proof; 3) the availability of process to compel unwilling witnesses; and 4) practical problems that make trial of a case easy, expeditious and inexpensive. 330 U.S. 501, 508 (1947). The Court cautioned that although a Plaintiff may not harass the defendant by choosing an inconvenient forum, "unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.*

Defendants have failed to prove that a specific forum abroad is the more appropriate venue to litigate the case. First, Plaintiff, a New York corporation, chose to bring this action in the Southern District of New York, and courts generally defer to plaintiffs' choice of forum. *Murray v. BBC*, 81 F.3d 287 (2d Cir. 1996). Plaintiff alleges that U.S. consumers attended the

19

Hong Kong Show, and claim that Plaintiff experienced harm to their business, domestically. Second, Defendants fail to demonstrate that an alternative forum would be more convenient to litigating in New York—or that an alternative forum would assist locating relevant evidence. Despite Defendants' claim that they will have to conduct transnational discovery, the convenience of the parties weighs in favor of litigating in the Southern District of New York. Third, given that Turkish Zen Diamond and Güzeliş have a significant connection to New York through New York Zen Diamond, this Court has the ability to compel the attendance of unwilling witnesses. Fourth and finally, Defendants New York Zen Diamond and Turkish Zen Diamond are corporations, with Güzeliş as the majority owner of both. Defendants are sophisticated parties with the relative means to litigate in New York.

Because the balance of factors weighs in favor of maintaining this action in this District, this Court denies the Defendants' Motion to Dismiss for *forum non conveniens*.

**V.     Conclusion**

For the reasons stated above, the Court DENIES the Defendants' Motion to Dismiss for lack of personal jurisdiction and *forum non conveniens*, without prejudice. The Court GRANTS Defendants' Motion to Dismiss the Copyright and Lanham Act claims, as well as the false advertising, unfair competition, and unjust enrichment claims.

This resolves Docket No. 56. If Plaintiff wishes to file an Amended Complaint, they may do so by July 31, 2017.

SO ORDERED.

DATED:     New York, New York
           June 29, 2017

_____
KIMBA M. WOOD
United States District Judge